UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES THOMAS SELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV01205 RWS |
| ) | |
| UNITED STATES OF AMERICA ) | |
| DEPARTMENT OF JUSTICE ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on Defendant United States of America Department of Justice's Motion to Dismiss for Lack of Jurisdiction [#5].

Plaintiff Charles Thomas Sell filed this complaint under the Federal Tort Claims Act alleging continuous improper medical care and treatment while he was held in federal custody. Defendant United States of America Department of Justice moves to dismiss this complaint under Federal Rule of Civil Procedure 12(b)(1).

The Department of Justice argues that there is a lack of subject matter jurisdiction because Plaintiff failed to file an administrative claim under the Federal Tort Claim Act within the two-year statute of limitations.

Viewing the available facts regarding jurisdiction, I find that further discovery is necessary to determine whether a treatment plan followed Sell from the Federal Medical Facility in Springfield, Missouri to the St. Louis County Justice Center.

## I. Background

The facts, as alleged by Plaintiff Charles Thomas Sell ("Sell") in his complaint, are as follows:

Sell was in the custody of Defendant United States of America Department of Justice ("DOJ") from April 1999 until April 2005. During that time, Sell alleges he received continuous improper medical care and treatment which failed to reach the degree of care, skill, and learning ordinarily used by members of the medical profession under the same or similar circumstances. Among his allegations of improper care, Sell alleges that the DOJ failed to give proper treatment orders to its employees, agents, and servants and failed to provide appropriate specialists and doctors in consideration of his medical condition. In a letter dated September 7, 2006, Sell submitted his claims in writing to the DOJ. On January 8, 2007, Sell received notice from the DOJ that his claims were rejected, thereby exhausting all administrative remedies. On June 29, 2007, Sell filed his complaint with this court, requesting relief under the Federal Tort Claims Act ("FTCA").

## II. Legal Standard

The purpose of a Federal Rule of Civil Procedure 12(b)(1) motion is to allow the court to address the threshold question of jurisdiction, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial." Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). "Compliance with the statute of limitations of 28 U.S.C. § 2401(b) is a jurisdictional prerequisite to suit under the Federal Tort Claims Act." Id. at 728.

The first step for a court determining a 12(b)(1) motion is to "distinguish between a 'facial attack' and a 'factual attack.'" Id. at 729 n.6. "[A] crucial distinction, often overlooked, [exists] between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the

existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Osborn, 918 F.2d at 729. "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (citing Mortensen, 549 F.2d at 891).

In a factual 12(b)(1) motion, the issue is the district court's subject matter jurisdiction, which is separate from any issues with the pleadings. Because subject matter jurisdiction goes directly to the court's power to hear the case, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Id. at 729. Additionally, in defending a factual attack, the plaintiff carries the burden of proof that jurisdiction exists. Id. at 730.

### III. Analysis

The DOJ argues that Sell's complaint should be dismissed because Sell failed to file his administrative claim within the FTCA's two-year statute of limitations.

Compliance with the FTCA's statute of limitations is an issue of this court's subject matter jurisdiction and is a jurisdictional prerequisite to suit. Id. At 728. A challenge to this court's jurisdiction due to Sell's failure to comply with the statute of limitations is a factual attack because it goes directly to the court's jurisdiction without any challenge to the face of the pleadings.

Section 2401(b) of the FTCA states a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The plaintiff carries the burden of proving that jurisdiction exists. Osborn, 918 F.2d at 730. In order to determine whether the statute of limitations under the Federal Tort Claims Act was met, the court can consider the whole record. The court must find by a preponderance of the evidence that the claim accrued less than two years before the plaintiff filed with the government agency in order to satisfy the jurisdictional requirement. Id. at 728. The preponderance of evidence standard requires this court find that it is more likely than not that Sell filed an administrative claim with the DOJ within two years of the accrual of his claim. United States v. Stewart, 462 F.3d 960, 964 (8th Cir. 2006), Dunne v. Libbra, 448 F.3d 1024, 1027 (8th Cir. 2006).

A. The Continuous Care Doctrine is Applicable to This Case.

Sell argues that the continuous care doctrine should apply, thereby tolling the statute of limitations during the time he was under the DOJ's continuous care.

The Supreme Court has held "that an FTCA claim for medical malpractice accrues when a plaintiff becomes aware of his injury and its probable cause." McCoy v. United States, 264 F. 3d 792, 794 (8th Cir. 2001) (citing United States v. Kubrick, 444 U.S. 111, 122 (1979)). However, the Eighth Circuit has found that where the continuing treatment doctrine applies, the doctrine's application tolls the statute of limitations during the course of treatment. Id. at 795. Therefore, "a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time." Wehrman v. United States,

830 F.2d 1480, 1483 (8th Cir. 1987). This approach is most appropriately applied when "no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm.'" Id. (citing Page v. United States, 729 F.2d 818, 821-22 (D.C. Cir. 1984), Fowkes v. Pa. R.R., 264 F.2d 397, 399 (3d Cir. 1959)).

Additionally, under the FTCA, "a litigant may not base any part of his tort action against the United States on claims that were not first presented to the proper administrative agency." McCoy, 264 F.3d at 795. Therefore, in order to apply the continuous care doctrine, Sell must have clearly put the DOJ on notice of his intention to do so in his administrative claim.

Because this is a factual attack on jurisdiction under a Rule 12(b)(1) motion, I am permitted to look at facts outside the pleadings to determine jurisdiction. Olsen, 918 F.2d at 729. In the first paragraph of Sell's September 7, 2006 letter to the DOJ, Sell alleges improper care "received while in custody of the Federal Bureau of Prisons [at the] U.S. Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri and the United Stated [sic] Medical Center for Federal Prisoners in Batner [sic], North Carolina." Sell has since limited his claim to exclude treatment which occurred at the United States Medical Center for Federal Prisoners in Butner, North Carolina. See Plaintiff Charles Thomas Sell's Sur Reply to Defendant United States of America's Motion to Dismiss [#19] p. 1. Sell's time in Springfield ended on April 28, 2004, more than two years prior to the submission of his claim to the DOJ.

After he was incarcerated at the Federal Medical Center in Springfield, Missouri facility and before his incarceration at the Butner, North Carolina facility, Sell was held at the St. Louis County Justice Center from May 4, 2004 to November 29, 2004. Sell argues that the continuous care

doctrine includes his incarceration at the St. Louis County facility. The second paragraph of Sell's September 7, 2006 letter alleges "[t]he injury . . . he received was *ongoing* during the tenure of his confinement in the federal prison system in that treatment required for his psychiatric illness." (emphasis added). I find that Sell's administrative letter put the Government on notice that Sell is alleging continuous injury during his entire incarceration period, rather than limiting himself only to events that occurred in Butner, North Carolina and Springfield, Missouri.

The Department of Justice argues the continuous standard should not apply to Sell because "Plaintiff's treatment plan was undisputedly under continuous scrutiny and litigated many times during the pendency of his criminal charges." In support, the DOJ puts forward Sell's Requests for Administrative Remedies which he made while incarcerated demanding to have his treatment plan independently reviewed and his medical records sent to his attorneys. While these documents do show that Sell was concerned about his treatment plan while incarcerated, Wehrman makes clear that even if the plaintiff knows of negligence, so long as the care is continuous the claim does not accrue until the care has ended. Wehrman, 830 F.2d at 1483.

The DOJ also attempts to use these documents, coupled with notes from U.S. Medical Center for Federal Prisoner's psychologist stating that Sell's declining condition was due to his refusal to take medication, to illustrate the ongoing litigation around Sell's treatment plan and to argue that Sell's refusal to follow the treatment plan should somehow bar his claim. The continuous care standard does not require that Sell or his attorneys never protested his treatment nor does it require Sell to have followed his treatment plan exactly during every day of Sell's incarceration. What Sell alleges is that the treatment plan was negligent and that it caused him injury. The issue of causation

does not go directly to this court's jurisdiction over this case and is properly left to the jury to decide.

Therefore, Sell may apply the continuous care standard to toll the statute of limitations under the FTCA.

B.  It is Unclear Whether Sell's Treatment Plan Followed Him to St. Louis County Justice Center.

In order for Sell to carry his burden of proof, he must show by a preponderance of the evidence that his treatment plan followed him from the U.S. Medical Center for Federal Prisoners in Springfield, Missouri to the St. Louis County Justice Center. If the treatment plan did not follow him to the St. Louis County Justice Center, Sell's claim fails to fall within the FTCA's two-year statute of limitations.

Both parties concede that St. Louis County Justice Center is an independent contractor. The Supreme Court made clear in <u>United States v. Orleans</u> that the FTCA "was never intended . . . to reach employees or agents of all federally funded programs that confer benefits on people." <u>United States v. Orleans</u>, 425 U.S. 807, 813 (1976). However, the Supreme Court has also held that the FTCA does not waive immunity for independent contractors. <u>Id.</u> at 814. "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" <u>Id.</u> (citing <u>Logue v. United States</u>, 412 U.S. 521, 528 (1973)). Because the St. Louis County Justice Center is an independent contractor, no tortious behavior performed by a St. Louis County Justice Center employee is recoverable under the Federal Tort Claims Act. <u>Logue</u>, 412 U.S. at 526.

However, Logue also illustrates that the federal government, through the behavior of its employees, can be liable for damages occurring under an independent contractor's care, if caused by a government employee's instructions. Id. at 532-33 (affirming the dismissal of claims against an independent contractor but remanding for consideration of government liability due to the negligence of the government employee who instructed the independent contractor.)

Therefore, the issue remains as to whether the medical treatment and mental health care given to Sell at St. Louis County Justice Center was pursuant to a treatment plan that had been given to the St. Louis County Justice Center, the independent contractor, from the DOJ. The DOJ argues that the contract with the St. Louis County Justice Center makes clear that the St. Louis County Justice Center agreed "to provide federal prisoners with the same level of medical care and services provided to local prisoners. . ." However, this contract does not address treatment plans, and Sell alleges that the improper care and treatment he received at the St. Louis County Justice Center was a direct result of the treatment plan which followed him from the federal facility in Springfield, Missouri.

The burden is on Sell to prove subject matter jurisdiction by a preponderance of the evidence. Thus far, Sell has failed to prove that a treatment plan followed him from the DOJ's Springfield, Missouri facility to the independent contractor facility in St. Louis County. However, it would be premature for me to rule on this Motion to Dismiss without providing Sell with an opportunity to conduct limited discovery on the issue of whether a treatment plan followed him from the U.S. Medical Center for Federal Prisoners in Springfield, Missouri to the St. Louis County Justice Center.

Accordingly,

**IT IS HEREBY ORDERED** that parties shall have **60 days** to conduct limited discovery on the issue of whether a treatment plan followed Sell from the U.S. Medical Center for Federal Prisoners in Springfield, Missouri to the St. Louis County Justice Center.

**IT IS FURTHER ORDERED** that parties shall supplement their briefing on the pending Motion to Dismiss, in writing, no later than **July 3, 2008**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of April, 2008.